## State of Maryland *vs.* Archibald Sterling, Sen'r, President of the Savings Bank of Balto.

Mandamus: Code, Art. 81, sec. 95, construction of: Legislature—Powers and Duties of in the Assessment and Collection of Taxes.—On an application for a *mandamus* to compel the defendant to pay to the State Treasurer a tax of twenty-five cents on every hundred dollars worth of deposits in the Savings Bank of Baltimore, on the 1st of July 1862, under sec. 95, of Art. 81, of the Code of Pub. Gen. Laws, it was Held:

1st. That the *mandamus* was properly refused.

2nd. The exercise of the power to value any taxable property within the State, and assess thereon a just proportion of the public taxes, in conformity with the principle of equality of taxation of taxable values, can in no legal sense be a violation of the terms or spirit of the 13th Art. of the Declaration of Rights.

3rd. The duty of ascertaining taxable values and of assessing and collecting the taxes thereon, necessarily vests in the discretion of the Legislature, and it may perform that duty by its own legislative acts or through the agency of such officers or tribunals as it may appoint for that purpose.

4th. The legislative power to assess and compel the payment of State taxes to be made directly to the State Tseasurer, without other official assistance, implies power to determine the value of the property to be assessed, and consequently a power of discrimination in selecting and fixing the taxable values.

5th. The force of the terms used in Art. 81, sec. 95, of the Code of Pub. Gen. Laws, wholly excludes the idea of an assessment upon valuation. The rate of the tax is prescribed by the amendment of sec. 23, and as the report of the President of the Bank to the Comptroller shows an assessable value, the requirement of an immediate payment of the tax thereon operates as a direct legislative assessment of the tax.

6th. This assessment does not affect the provisions which specifically exempt certain persons, corporations, and kinds of moneyed securities from taxation, nor did the Legislature in making it contemplate any restriction or modification of those which provide for the assessment and payment of the tax upon the capital stock of other corporations, in which the deposits of Savings Banks should be invested.

6th. The principle of liability for taxes in proportion to actual worth in real and personal property, declared by Art. 13th, of the Declaration of Rights is a bar to double taxation, and all legislative provisions for the assessment and collection of taxes should be so construed as to avoid that result.

8th. The true taxable value of the deposits bearing interest, reported to the Comptroller under Art. 81, sec. 95 of the Code, must be ascertained by deducting from their aggregate amount the several amounts invested in the United States, State, Bank and Gas-Company stocks, and those of nontaxable persons and corporations; the remainder being the amount liable for the tax contemplated by this section.

State *vs.* Sterling.

9th. Deposits of charitable corporations in amounts less that $15,000, and of perse t. in amounts less than $50, can be made liable for the tax only by assessments for values exceeding the amounts stated, and the State in establishing its claim to the tax upon such property is bound to show the liability of the same by such an assessment.

APPEAL from the Superior Court of Baltimore City :

This was an application for a *mandamus* to compel the defendant to pay to the State Treasurer a tax of twenty-five cents on every hundred dollars worth of deposits in the Savings Bank of Baltimore, on the first of July 1862. By the supplement to the Code, Article 81, page 64, it is enacted that the Mayor & City Council of Baltimore, in the year 1862, and annually thereafter, shall impose a tax for the use of the State, of twenty-five cents on every hundred dollars worth of assessable property within its jurisdiction, according to the valuation thereof. By the 95th section of same Article it is provided, that "the President of any Savings Bank which shall receive deposits and give certificates therefor, bearing interest, shall furnish to the Comptroller on the first day of July in each year, the aggregate amount of deposits in such corporation, and shall pay to the Treasurer on said day, out of the interest due to the depositors, the State tax on said certificates." The amount of deposits returned by the defendant as in the Savings Bank of Baltimore, and bearing interest on the first day of July 1862, was $4,340,820.40, and it is claimed by the petition that the defendant must pay one-quarter of one per cent. on that amount as the State tax on the Savings Bank of Baltimore for the year 1862.

In his answer to the application for a *mandamus*, the defendant assigned the following reasons why the writ should not be granted.

1. That the aggregate amount returned to the Comptroller includes deposits which did not bear interest on the first day of July.

Assuming the fact to be as alleged, the return should be corrected. The State claims to tax only interest-bearing deposits.

2. That the deposits in the bank are liable to assessment, as other descriptions of property made subject to taxation. And that the State tax, like local taxes, is to be imposed on such assessed value. No assessment, it is said, has been made of those deposits, and therefore, no State tax is payable thereon.

3. That the bank has invested a large part of the deposits in bonds of the United States. Those bonds are not liable to taxation, as moneyed securities. And they are not to be taxed indirectly, under pretext of levying a tax on the moneys invested in the purchase thereof.

4. That other portions of the deposits have been invested in the purchase of State bonds, the tax on which has been retained out of the interest accrued thereon, and bank stocks, upon which the bank has already been compelled to pay the State tax, and ought not to pay a second tax on the amount of deposits thus invested.

5. That the amount returned includes deposits made by persons who are exempt by law from taxation, to wit: persons whose deposits are less than fifty dollars, and charitable corporations whose deposits do not exceed fifteen thousand dollars.

The Court below, (MARTIN, J.,) dismissed the petition and filed with his order the following opinion:

"I think that the Legislature must be regarded, by the adoption of the 95th section of the 81st Article of the Code, to have made a legislative assessment of the value of the deposits remaining in the Savings Bank of Baltimore, on the 1st of July 1862, and reported to the Comptroller as amounting to $4,340,820.40, treating the deposits as equivalent to their nominal value. That an assessment of this description is within the verge and scope of the legislative power cannot be disputed. They may, in all cases, do directly that which they have the right to accomplish through the instrumentality of agents. *State vs. Mayhew,* 2 *Gill,* 477. The valuation of the deposits are then to be con-

sidered as assessed by the Legislature, at their nominal value.

"It appears, however, from the answer of the respondent, that a larger portion of the deposits, constituting in part the aggregate amount as reported to the Comptroller, consisted of investments made by the Savings Bank in the bonds of the United States; and the question is, whether the deposits thus invested, are liable to be taxed, upon the true construction of the 95th section of the 81st Article of the Code? I think not. These are instrumentalities created by the General Government for the purpose of executing its constitutional and acknowledged powers, and are not subject to taxation by the State.

"The States have no right by taxation or otherwise, to paralyze, or even to retard, impede, burden, or in any manner control the operations of the constitutional laws enacted by Congress to carry into effect the powers vested in the National Government. 4 *Wheaton,* 316. 2 *Peters,* 440. The right to tax involves the power to destroy, and if the doctrine could be maintained that the States have the authority to tax the bonds and stocks of the United States, and thus prevent or impede the sale of these national moneyed securities, the consequences would be so mischievous as to be almost beyond calculation.

"It is therefore evident beyond the possibility of dispute, that if these investments had been made by the individual depositors directly, or not through the instrumentality of the Savings Bank as their agent, the bonds would have been exempt from taxation by the State. The Legislature in adopting the 95th section of the 81st Article of the Code, as framed by those who prepared it, must be supposed to have been perfectly aware of the respective rights of the National and State Governments, in reference to the power of taxation, and that the Savings Banks, under their charters, invested the deposits placed from time to time under their control, only as the agents or trustees of the beneficiaries by whom the money was deposited, and

it is, I think, perfectly clear, that funds so invested by an agent or trustee occupying the position of the Savings Bank in relation to its depositors, is to be considered as an investment virtually, and, for all practical purposes, as an investment by the depositor himself.

"The Legislature is to be assumed to have so understood the relation of these parties, and that the 95th section is to be so interpreted, as impliedly excluding from taxation, by the State, those investments.

"The claim asserted by the State to recover from the Savings Bank by means of a *mandamus*, which seeks only to accomplish what would perhaps have been within the reach of an action of *assumpsit*, the tax which has already been retained by the State out of the interest which has accrued on the State bonds, in which a portion of these deposits have been invested, cannot be maintained.

"This tax has already been paid. It is in the coffers of the State. The State appears in Court as an individual suitor, and the demand is repelled by the doctrine of estoppel. The investments made by the Savings Bank of their deposits in the bank and gas stocks, stand in the same predicament; those shares have been already taxed in the hands of those respective institutions, and the tax has been paid to the State. The State cannot recover it again. It would subject the depositors to a double tax, an injustice always condemned and which is never to be tolerated. 2 *Gill*, 477. 5 *Gill*, 236.

"It appears from the return, that among the depositors there are persons whose deposits are less than fifty dollars, and charitable corporations whose deposits do not exceed fifteen thousand dollars, who claim to be exempt from taxation under the 4th and 5th sections of the 81st Article of the Code. And the question on this branch of the case, which has been earnestly disputed, is, whether it is incumbent on the Savings Bank as the agent and trustee of the depositors, to show affirmatively that the person proposed to be exempted, has not been assessed to the value of fifty

dollars, and that the charitable institution sought to be protected, does not own property to a greater value than fifteen thousand dollars.

"After a careful consideration of this question, I am clear in my opinion, that if the State seeks to impose a tax upon an individual depositor, upon the ground that he is worth in assessable property more than fifty dollars, this fact it is incumbent upon the State to establish by an ascertained assessment and valuation through the agency of the local tribunals, as other assessments are ascertained, here there is no legtslative valuation.    And when the State claims that the depositor possesses taxable and assessable property, *ultra* the fifty dollars, that fact must be ascertained through the ordinary agencies for assessment.    The same principle controls the case of the charitable institutions.

"I understand that in reference to all those sums that did not bear interest on the first of July 1862, as not having been deposited for four months, there is no controversy, and for the reasons which have been stated in this opinion, the petition for a *mandamus* in this case is dismissed."

From the order dismissing the petition the petitioner appealed.

The cause was argued before BARTOL, GOLDSBOROUGH and COCHRAN, J.

*Thos. S. Alexander* and *Thos. Donaldson,* for the appellant, argued :

1st. That the basis of taxation established by the Code with reference to the capital or property of a Savings Bank, is the nominal value of the deposits thereof, bearing interest on a *certain* day annually.    The return to be made to the Comptroller is to be of the aggregate amount of deposits, as shown by the books of the bank, and the tax is to be paid on the aggregate amount thus returned.    Code, Art. 81, sec. 95.

2. That this basis is not inconsistent with Art. 13 of the Declaration of Rights, which declares that every person in the State, or person holding property therein, (other than paupers,) ought to contribute his proportion of public taxes for the support of Government, "according to his actual worth in real and personal property."

The Code, Art. 81, secs. 3, 4 and 5, creates exemptions which are altogether inconsistent with the idea that the Declaration of Rights was intended to prescribe an inflexible rule of taxation. And the constitutionality of such exemptions is established by the decision of the Court of Appeals in 12 *G. & J.*, the tax cases. And by section 6, slaves are valued after rates which are altogether irrespective of their value in the market as property. This rule extends to the counties only. In the City of Baltimore the slave is to be assessed according to its cash value.

3. That the nominal value of the deposits bearing interest on a certain day annually, being thus adopted as the basis of taxation, specially for the case of Savings Banks, is not to be reduced by the value of the investments made by the bank in properties, which, in the hands of individuals, would be exempt from taxation. The property of the individual citizen, and of an unincorporated association or partnership, is assessed at its actual value without any discount allowed on account of the indebtedness of the owner or owners, even where the debt is a lien or charge on the property. In such case it is deemed fit that the owner shall be relieved from taxation on investments made by him in property, which in its nature is not subject to taxation. But the property of a corporation having capital stock, properly so called, say of a bank of discount and deposit, is not taxable in the hands of the corporation, or of the stockholders. In substitution therefor, the capital stock is taxed in the hands of the individual stockholder, upon the popular estimate of the value of the property of the bank, reduced by the amount of the bank's indebtedness. Thus if a bank with a capital of $1,000,000 sustains a dis-

count line of $2,500,000, its stockholders are taxed only on the $1,000,000, or on the cash value of the capital stock in the market. On the other hand no deduction is allowed, on the ground that the bank has invested its assets in property, which is generally not subject to taxation. And the rule seems to be, that where a special basis of taxation is applied, which may operate to exempt a part of the property of the taxable, which would under the general law be liable to taxation, the privileged party or class must abide by the rule or basis as prescribed. There is nothing in this view which conflicts with the Constitution of the United States, as expounded in *McCullough vs. The State of Maryland*, 4 *Wheat.*, 316. *Weston vs. The City of Charleston*, 2 *Peters*, 449.

4. That the provisions of section 95, of Art. 81, of the Code, modify or control sections 4 and 5 of the same Article. And if this was not so, it would be necessary that the Savings Bank should show that the charitable institution proposed to be protected, does not own property of a greater value than $15,000, and that the person proposed to be exempted as a pauper, is not assessed to the value of fifty dollars.

5. That the Savings Bank is to save itself from double taxation, by resort to other processes. Thus the banks and other corporations having capital stock, properly so called, ought to deduct stock held by a Savings Bank as not properly taxable. And it is presumed that the Comptroller would not hesitate to order the State tax retained on State stock held by a Savings Bank to be returned, on the payment by the Savings Bank, of the State tax imposed on its interest bearing deposits. There can be no doubt certainly, that the Legislature would make provision for refunding the double tax received on bank stocks, and the tax retained by the Treasury out of interest payable on the State debt. *State vs. Mayhew*, 2 *Gill*, 482.

*J. Mason Campbell* and *Reverdy Johnson*, for the appellee, argued:

1. That if this is to be considered a tax on the deposits, it is a tax on the amount which the bank owes, and under our Constitution and laws, as well as those of other civilized people, taxes are imposed on a man's property, and not on the amount of his indebtedness. Declaration of Rights, Art. 13. *William's Case,* 3 *Bland,* 256, 259, 260 261, 262 and 263.

2. But assuming this tax to be imposed on the certificates of deposit, the depositors in the aggregate are called upon to pay upon the aggregate amount of their deposits, that is to say, upon the aggregate amount of the indebtedness of the Savings Bank to them. It is assumed therefore that this indebtedness is assessable property, and yet, in point of fact, it never has been assessed nor its valuation ascertained. The 23rd section of the 81st Article, which authorizes the levy of the tax, limits the property taxed to that which is assessable, and makes it pay according to the valuation. In the absence of such valuation the basis which the law fixes for the calculation of the tax is wanting. Had the Code enacted otherwise, its action would have been unconstitutional. All the legislative precedents since 1776, show that the clause of the Bill of Rights which makes the citizen taxable according to his actual worth in real and personal property, has been uniformly construed that he shall be chargeable only according to the valuation made by an indifferent tribunal, constituted for the very purpose, and acting equally upon every tax payer. February 1777, ch. 21, 22. 1785, ch. 41. 1797, ch. 89. 1812, ch. 191. 1841, ch. 23. 1858, ch. 241. 6 *Gill,* 291.

The Code has followed all these precedents, and by the very section which in 1862 imposed for that year the State tax of twenty-five cents, only imposed it upon every hundred dollars worth of property in the City of Baltimore, according to the valuation thereof. At that time, as well as

before and since, the Appeal Tax Court in said City, was clothed with the power and duty of valuing the property in that city liable to assessment. It has not been called upon to value these certificates of deposit, separately or in the aggregate, and the tax fails consequently for the want of a valuation settling what amount is to pay the tax.

3. If it be suggested that the Legislature may itself fix a valuation to property, the answer is, that it has not declared its intention to supersede in this instance the ordinary tribunal. Where it has meant to do so it has been very specific, as in the 6th section of the 81st Article, where it distributes slaves into classes, and expressly values each class; or, in the 103rd section of the same Article, where it expressly directs that the Treasurer shall assess at rates fixed by itself, the several issues of State stock according to the interest they bear. *Expressio unius est exclusio alterius*, and the fact that the Code, while express upon the subject of slaves and State stock, is silent as to Savings Bank certificates, is conclusive to show that the certificates were left to be valued by the Appeal Tax Court. Nor would it follow, that because the Legislature had the right to assess public stock and slaves, that it has the right to assess these certificates, either separately or on the aggregate. The value of the aggegate of certificates in the Savings Bank would depend altogether upon the value of the securities held by the bank. The description and worth of these securities involve many inquiries not within the reach of the Legislature, like the value of slaves or State stock. For instance, John Smith has borrowed a thousand dollars from the bank, and that thousand dollars is secured by his note and a mortgage on his property. How can the Legislature know what is the pecuniary ability of John Smith, or the value of the property John Smith has mortgaged, and what is true of John Smith is true of a thousand others. To assume that the Legislature meant to ascertain the value for itself of all the promissory notes, counted by thousands, which are held by the Savings Bank, and of the real and personal security given

for their payment, is to assume that it came to a conclusion manifestly without any grounds for arriving at it. It is not too much to affirm that no power exists on the part of the General Assembly, to declare that the tax payer has a certain amount and value of property, and shall pay taxes accordingly. It would be but a very short step, and necessarily involved in it, to declare that A shold pay one hundred dollars, B five hundred dollars, and C five thousand dollars, without the formality of ascertaining whether they had any property at all. Equality of taxation necessarily implies an ascertainment by some competent tribunal of the amount of each tax payer's property, and without such an ascertainment equality is impossible.

4. Section 105 of Article 81, does not at all apply to the valuation of property, but assuming the valuation made, either by the ordinary tribunals upon their own judgment or according to the legislative rule, as in section 6, or by the Treasurer, as provided by section 103, directs how the collection of the taxes upon the specified item of property shall be made. The precedent was first set for this legislation by the Act of 1843, ch. 289. It is doubtful too whether it does not apply exclusively to the certificates mentioned in section 96.

5. Waving however, for the present, the want of a valuation, and assuming that the amount of deposits on the 1st July, is to be taken as a valuation, the point arises, of what is that amount a valuation? The 95th section provides, that the tax is to be paid out of the interest due the depositors, while section 93 which provides for a tax on stock companies, makes the stock liable to tax whether a dividend has been declared or profits earned, or where neither one nor the other exists. This difference is due to the character of the Savings Banks which are created for the purpose of making investments in public or private securities, and thus and in no other way, authorized to raise the income which is to be paid the depositors. What therefore in the Savings Bank fills the place occupied by

the capital stock in stock companies, is the amount of securities held by the Saving Bank, and from which alone it derives its income.   The depositors in the aggregate are the owners of all these securities, for the bank is nothing but a trustee for them without any beneficial interest whatever in the securities, or the income arising from them. See the Charter of the Savings Bank of Baltimore, 1818, ch, 93, of which the Charters of all the other Savings Banks are merely copies.   The assumed valuation, therefore, is a valuation of the securities held by the bank, and of course in thus valuing the property of the bank, the Legislature only meant to tax in this special shape the assessable property which was not taxed in any other shape.   There must be deducted therefore from this valuation all those securities which are entirely exempt from taxation.   This will embrace United States stocks.  In the next place all the State, City, Bank and Gas stocks must be deducted, because the shares held in these institutions by the Savings Bank are liable to pay, and have paid their tax as part of the respective capital Stocks to which they belong, under secs. 93 and 94, of Article 81.    But these are not the only deductions. The amount of the assumed valuation ought to be further reduced by deducting from it three classes of deposits which are set forth in the answer. The first is, of all sums which on the first day of July 1862, were not bearing interest, not having been deposited for four months.   One instance of this kind is set forth in the answer to test the principle, and its decision will settle all like cases.   The certificate by the terms of section 95, must bear interest on the 1st July, A. D. 1862.   Now, by the by-laws of the bank no deposit bears interest till it shall have been in the bank four months.  All deposits therefore which on the 1st day of July 1862, had not been four months in the bank were not bearing interest, and so were not taxable.   The second class of deposits to be deducted is where the amount is less than fifty dollars, and the third, where the deposit is made by a charitable institution.   Article 81, sections 4

65      v. 20.

and 5, are relied upon to sustain these deductions. If it be said that it does not appear whether the depositor of the sum less than fifty dollars may not have other property, giving him in all with his deposit an aggregat of upwards of fifty dollars, the reply is, that the exemption of persons, who are not assessed to the sum of fifty dollars, is not repealed by the substitution of a legislative assessment or valuation, in place of the valuation by the ordinary tribunal. The valuation, whether made by one or the other, is made upon the same principles and in conformity with the same provisions.

In the present instance it is assumed that the General Assembly has of itself made a valuation of the property of depositors in the Savings Bank, and separated that property, for the purpose of valuation and taxation, from the general mass. But it has not dispensed with the application thereto of the rules which it has prescribed for the whole system of assessment and taxation whereof this merely forms a part. As therefore in a valuation made by the ordinary tribunals the ascertainment that a citizen was assessed to the sum of less than fifty dollars, would be *prima facie* evidence that his little property was not intended to form part of the aggregate of property liable to taxation; so the ascertainment in this special and limited valuation, that a depositor has less than fifty dollars, leads *prima facie* to the conclusion that his deposit is no part of the taxable aggregate. This is the more reasonable, because under this system of exceptional valuations the individual depositor has no right to be heard, and can obtain no correction. The State deals exclusively with the depositors in the aggregate, throught heir common trustee. It must be admitted that if a party who has twenty dollars in the Savings Bank, has no other property any where, his deposit in the Savings Bank is not to be taxed. Section 5, Article 81, is imperative on this head. Yet how can he obtain the exemption guaranteed him by law unless the amount of his deposit is to throw the burthen of proof on

those who allege that to be only a part of what he is worth? The very same line of observation applies to incorporated charitable institutions, which form the third and remaining class of depositors whose deposits ought to be deducted from the aggregate amount. Article 81, section 4, only exempts them to the amount of fifteen thousand dollars each. The instance presented is of a charitable institution whose deposit is only a few hundred dollars, and there are many other like cases. In what way can these depositors prove the negative, to wit: that they have not got more than fifteen thousand dollars? The presumption with this class, as with the one that precedes it, is that they have nothing but the item which goes to make up the aggregate assumed to be valued by the law. *State vs. Mayhew*, 2 *Gill*, 499, 490. *Gordon's Ex'r vs. Mayor & C. C. of Balto.*, 5 *Gill*, 236, *Tax Cases*, 12 *G. & J.*, 117.

COCHRAN, J., delivered the opinion of this Court:

The appellant assumes in the petition for the writ of *mandamus* in this case, that for the purpose of State taxation, a legislative assessment of the aggregate amount of interest bearing deposits in the Savings Bank of Baltimore, on the 1st of July 1862, was made by sec. 95, Art. 81, Code Pub. Gen. Laws, and that the duty of paying t'e State tax thereon, at the rate fixed by the amendment to sec. 23, Art. 81, made by the Act of 1862, ch. 105, was imposed on the President of the bank, without regard to the existing character of the deposits, or right of any depositor, to exemption from taxation under other provisions of the Code.

The appellee, referring to sec. 23, Art. 81, as amended by the Act of 1862, ch. 105, which provides for a State tax of twenty-five cents "on every hundred dollars worth of assessable property according to the valuation thereof," denies this to be the true construction of sec. 95, and insists: 1st. That these deposits were liable to assessment, only upon valuation, and as no valuation appears to have

been had, that there was no assessment of the tax claimed; 2nd. That a large portion of the deposits had been invested in the bonds of the United States, and for that reason were not liable to taxation; 3rd. That other portions of the deposits had been invested in the stocks of other corporations which had already paid the State tax, and in State stocks, from the interest of which the State tax had been deducted and retained by the State Treasurer; and 4th. That the aggregate amount of interest bearing deposits, reported to the Comptroller, included deposits of charitable corporations, the respective amounts of which were less than $15,000, and of persons in amounts of less than $50, which corporations and persons are exempt from taxation.

For the purpose of reaching a judicial determination of the several questions involved in these proposition, it was assumed, in the argument at the bar, that the aggregate of the interest bearing deposits, reported to the Comptroller, included investments made to indefinite amounts in the stocks and securities mentioned, and also deposits of charitable corporations in amounts of less than $15,000, and of persons in amounts of less than $50.

That the Legislature of the State has power to value any taxable property within the State, and assess thereon a just proportion of the public taxes, we think cannot be disputed. The exercise of such a power, in conformity with the principle of equality of taxation of taxable values, could, in no legal sense, be a violation of the terms or spirit of the 13th Art. of the Declaration of Rights, which simply declares the liability of persons, owning property within the State, to contribute for the support of the Government, in proportion to their actual worth in such property. The condition of the liability, thus pronounced, that it should be proportional to actual worth, was undoubtedly intended to prevent abuse of the taxing power, and, in that respect, prescribe a general rule to which all legislative measures for the imposition and collection of taxes, should conform. The duty of ascertaining taxable values and of

assessing and collecting the taxes thereon, necessarily rests in the discretion of the Legislature, and it may perform that duty by its own legislative acts, or through the agency of such officers or tribunals as it may appoint for that purpose. *State vs. Mayhew*, 2 *Gill*, 487. The legislative power to assess and compel the payment of State taxes to be made directly to the State Treasurer, without other official assistance, implies power to determine the value of the property to be assessed, and consequently a power of discrimination in selecting and fixing the taxable values. These powers have been so long exercised without objection, that they cannot be brought in question now, without contravening, in that respect, the settled policy of the State. *Tax Cases*, 12 *G. & J.*, 117. *State vs. Mayhew*, 2 *Gill*, 487. But the objection, on which the appellee chiefly relied in this branch of the case, was, that there had been no legislative assessment of the tax claimed. The question as to the fact and extent of the assessment thus presented involving all the other questions in the case, depends entirely upon the construction of sec. 95, Art. 81, which requires the President of any Savings Bank, receiving deposits and giving certificates therefor, bearing interest, to report to the Comptroller, on the 1st day of July in each year, the aggregate amount of such deposits then in bank, and on the same day to pay to the Treasurer the amount of the State tax thereon out of the interest payable to the depositors. It was said that the interpretation of this provision should be governed by the 23rd and 94th secs. of the same Art. We do not think so. The 23rd sec. provides generally for the assessment of all property according to valuation, and in view of its general character and purpose, it should not be permitted to control the construction of other provisions which look to or imply exceptional methods of assessment. Nor does the 94th sec. appear to have any direct bearing upon this question. That sec. was evidently framed with the single purpose of fixing a taxable liability upon the property and assets of corporations not

represented by capital stock. According to our understanding, it relates exclusively to such property as corporations, not represented by capital stock, may hold in absolute ownership for the use and benefit of the corporators. The end proposed by the 95th sec. is an entirely different one; for it provides for the taxation of property, the possession of which is qualified by rights superior, in some sense, to those of the corporation itself. It proceeds on the theory, that deposits in a Savings Bank, for which certificates bearing interest have been given, without regard to the character or form they may have assumed by investment, belong to the depositors who are not corporators, and not to the corporation or persons clothed with the corporate franchise. There can be no question as to the consistency of this provision with the organic character of the bank in this case, whose powers and duties under its charter, are clearly those of an agent or trustee. It is authorised to receive deposits and invest them, but it has power to do so only for the benefit of the depositors, to whom the interest or profits of the investments are made payable at stated intervals. It deals with them as principals entitled to withdraw their deposits at any time upon notice, and the property, in which the deposits may have been invested, is held by the bank for their use, and accounted for as deposits subject to their right of withdrawal. In contemplation of the bank charter, deposits bearing interest are invested deposits, and the section in question, in providing for the taxation of that species of property, necessarily assumes such deposits, and the investments, from the revenue of which the interest is payable, to be one and the same thing. Standing thus by legislative intendment as reciprocal representatives of each other, a tax on either, of necessity becomes a tax on the other, and upon the same principle, the exemption of either from that liability would operate as an exemption of the other. With this expression of opinion as to the office of the bank, and the interchangeable character of the investments and deposits, we proceed to consider

whether there was an assessment of the tax sought to be recovered by the 95th section.

Recurring to the language of that provision, to which alone we must go for its meaning and effect, we find that payment of the State tax is required to be made on the 1st day of July, on the aggregate amount of deposits bearing interest found to be in the bank on that day. No time is allowed for their valuation, nor is any provision made for the intervention of any public officer or tribunal for that purpose, and it abundantly appears from the concluding clause, that the Legislature contemplated nothing further as necessary to be done, to ascertain the value made liable for the tax in question. The force of the terms used wholly excludes the idea of an assessment upon valuation. The rate of the tax is prescribed by the amendment of sec. 23, and as the report of the President of the bank to the Comptroller shows an assessable value, the requirement of an immediate payment of the tax thereon, operates as a direct legislative assessment of the tax. Neither the depositors nor the bank in either of its possible relations of debtor, agent or trustee, can question the propriety of assuming the nominal value of the deposits bearing interest, as their true taxable value. The bank both receives and returns the deposits in money, and it is evident that a taxable value differing from their nominal value, could not be ascertained without resorting to some measure or standard not recognized by the Code. This assessment does not affect, however, the provisions which specifically exempt certain persons, corporations, and kinds of nominal securities from taxation, nor did the Legislature in making it, contemplate any restriction or modification of those which provide for the assessment and payment of the tax on the capital stock of other corporations, in which the deposits of Savings Banks should be invested.

The privilege of exemption, granted to charitable corporations assessed for less than $15,000, and to persons assessed for less than $50, remains unimpaired, and as the

public loans and stocks of the United States are also exempt, it follows, that the deposits of such corporations and persons, and also those invested in, and represented by, such loans or stocks, are not within the meaning or effect of this section. Deposits invested in the capital stocks of corporations, whose officers are required by law to pay the State tax thereon, should also be excluded from its operation for the reason, that the tax on the stocks is, in effect, a tax on the deposits invested in such stock. The same principle applies to the case of deposits invested in the bonds or stocks of the State, from the interest of which the Treasurer may, or is required to deduct and retain the amount of the State tax. The principle of liability for taxes in proportion to actual worth in real and personal property, declared by the 13th Art. Dec. of Rights, is a bar to double taxation, and all legislative provisions for the assessment and collection of taxes should be so construed as to avoid that result. These views necessarily lead us to the conclusion, that the true taxable value of the deposits bearing interest, reported to the comptroller in this case, must be ascertained by deducting from their aggregate amount the several amounts invested in United States, State, Bank and Gas Company's stocks, and those of non-taxable persons and corporations; the remainder being the amount liable for the tax contemplated by this section. It was admitted that the tax on the State, Bank and Gas stocks, had already been paid, and in accordance with the views expressed, we must assume that the taxable liability of the deposits represented by those stocks, was thereby exhausted. The case was argued however upon the further concession, that the amount reported to the Comptroller included deposits of charitable corporations in amounts of less than $15,000, and of persons in amounts of less than $50, upon which the question was raised, whether the bank, acting for such depositors, had the right to claim an exemption of those deposits, without first showing that the depositors had not been assessed respectively for values

State *vs.* Sterling.

exceeding those amounts. The right of such depositors to exemption generally was not disputed, and there appears to be no reason why the bank, acting for them, should not assert that privilege. These depositors can be made liable for the tax only by assessments for values exceeding the amounts stated, and the State in establishing its claim to the tax upon their property is bound to show their liability by such an assessment. The principle involved is not affected by the fact that the bank has possession of the deposits of such persons and corporations, nor is the State relieved of the duty of showing that such deposits are not within the privilege claimed. As there is nothing in this case showing that these depositors have been assessed to amounts sufficient to make them liable to taxation, their deposits must be excluded from the operation of the 95th section. Applying the principles stated in this opinion, there can be no difficulty in ascertaining the amount of the deposits upon which the tax should be paid. The Comptroller, by virtue of the Constitution, superintends the fiscal affairs of the State, and has full power to adjust and settle all public accounts.

We think, upon a careful consideration of the whole case, that the *mandamus* was properly refused, and therefore affirm the order from which this appeal was taken with costs to the appellee.

*Order affirmed.*

(Decided Jan. 27th, 1864.)