## WEAVER *vs.* THE STATE.

[BILL IN EQUITY TO CORRECT ERRORS IN TAX-ASSESSMENT.]

1. *Authority of commissioners' court to revise tax-assessment.*—Under the act approved December 9, 1862, (Session Acts, 1862–3, p. 43,) the commissioners' court has authority, on the application of a person against whom a tax is assessed for money hoarded, to revise the assessment, ascertain whether there is error in it, and by its judgment define that error; and if it exceeds its authority in correcting the error by its own judgment, instead of directing it to be done, this is an immaterial matter, when the error is such that its correction is a mere ministerial duty.

2. *Equitable relief against judgment at law correcting erroneous tax-assessment.*—Where the judgment of the commissioners' court, rendered on the application of a tax-payer for the correction of an alleged erroneous assessment against him, is removed by him, by *certiorari*, into the circuit court, and there affirmed, he cannot obtain relief against it in equity, on grounds which were available in the legal forum, without showing that he was prevented from obtaining relief at law by fraud, accident, or the act of the opposite party, unmixed with fault or neglect on his own part.

APPEAL from the Chancery Court of Dallas.
Heard before the Hon. N. W. COCKE.

THE bill in this case was filed by Phillip J. Weaver, on the 29th June, 1863, against the State of Alabama, the county of Dallas, and the tax-collector of said county; and sought to enjoin the collection of a tax which had been assessed against him, for the year 1862, on $100,000 hoarded out of the State. The bill alleged, that the complainant, acting under legal advice, did not include in his list of taxable property, rendered to the tax-assessor, the proceeds of his cotton crop previously shipped to Liverpool, under the circumstances hereinafter stated; that the assessor thereupon assessed against him the amount of $100,000, as money hoarded out of the State; that he made application to the commissioners' court of the county to correct this assessment; that said court, after hearing the evidence adduced, reduced the assessment to $62,728, and imposed the costs on him; that he then removed the proceedings, by *certiorari*, into the circuit court, and that the judgment of the commissioners' court was there affirmed. The other material allegations of the bill are the following:

"The testimony offered by complainant, in support of his motion before said commissioners' court, was in substance as follows: That some time previous to the 1st March, 1862, he had shipped a portion of the cotton raised by him on his own farms, to Liverpool, England, by or through H. O. Brewer & Co.; that he afterwards heard of its arrival, and some time after that it was sold, but when sold he did not know; that about the 27th February, 1862, H. O. Brewer & Co. drew several bills of exchange on Brown, Shepley & Co., of Liverpool, England, amounting in the aggregate to about $62,225, payable eighty-five days after date; that these bills were sent to complainant, for or on account of the cotton which he had shipped to Liverpool; and were understood to be for the amount of the proceeds of the sale thereof; that they were sent from Mobile by mail, and, according to the best recollection of the witness, were not received at Selma before the 1st March, 1862, but were received, witness thought, after the 1st March; that

said bills were not accepted, but were in complainant's possession when his tax-list was made out, and when the motion was tried ; that the witness was not able to state how or what was the mode of managing and settling up these shipments of cotton, and that complainant was a merchant in Selma and a planter. On this testimony, the said commissioners' court decided, that the assessment should be corrected by reducing the same to the amount of the bills of exchange, and rendered a judgment assessing complainant with the amount for which said bills of exchange were drawn, as money hoarded out of the State, and directed the tax-collector of said county to collect from complainant five per cent. on said amount, besides the county tax, (making nearly $6,000 on this item,) besides taxing complainant with the costs of the motion.

"Your orator further shows, that said commissioners' court, in their judgment-entry, have failed to state all the facts proved before them on said motion, and state the facts incorrectly, and, in fact, show by their record that facts were proved which were not proved. Their record states, that the proof showed that complainant had in the hands of Brown, Shepley & Co., of Liverpool, England, on the 1st March, 1862, the sum of $62,225, the proceeds of cotton of his before that time sold; and that he had in his possession, on said 1st March, 1862, bills of exchange for that sum, drawn by H. O. Brewer & Co., on Brown, Shepley & Co. Your orator says, that he is informed and believes that these things, so stated in said record, were not proved before said court; and he therefore charges that no such proof was made before said court, and that the record is false in this respect. The record fails to show when the said bills fell due ; and your orator charges that the proof before said court distinctly showed that they fell due eighty-five days after date, and that all of them bore date the 27th February, (except one, which bore date the 19th February,) 1862; and he therefore charges that the record fails to speak the truth in this respect.

"Your orator further shows, that he applied by petition to the Hon. Porter King, a judge of the circuit court, for a *certiorari*, which was granted; that he truly stated the facts

34

in said petition, as he then understood them; that he has
since learned more of the facts connected with the mode of
shipping cotton to Liverpool, and of selling cotton so
shipped, and of rendering the accounts for the proceeds,
and of the mode in which payment is made, and has endeav-
ored to state them in this bill, for the purpose of enabling
this honorable court to understand the nature of his case;
that on said petition said circuit court required the said
commissioners' court to send the said cause into said circuit
court for trial, which was done; that your orator appeared
in said circuit court, at its last term, and proposed to try
said cause *de novo*, and moved the court to allow him to
introduce evidence to establish the facts of the case; but
the court overruled his motion, and decided that he should
try the cause on the record by assignment of errors; that
he then, by his attorney, had for the first time discovered
the error and defects in the record, and moved said court
for a *certiorari*, to enable him to move said commissioners'
court to correct their said record, so that it should speak
the truth, and only the truth; but the court refused to
allow him this privilege, and he was then required to assign
errors on the record, and try thereon; and that said circuit
court, on said record, affirmed the judgment of said com-
missioners' court."

The chancellor sustained a demurrer to the bill, for want
of equity, and his decree is now assigned as error.

BYRD & MORGAN, for appellant.

M. A. BALDWIN, Attorney-General, and GEO. W. GAYLE,
*contra.*

A. J. WALKER, C. J.—The complainant, having been as-
sessed with a tax on $100,000 hoarded, applied to the court
of county commissioners to correct the assessment. That
court, overruling the application to be absolved entirely
from the assessed tax on money hoarded, held that the
assessor had committed an error in his determination of
the amount to be taxed, and adjudged that $62,728 was the
correct amount to be assessed. The judgment of the court
of county commissioners was carried by *certiorari* to the

circuit court for revision, and was by that court affirmed. We think the court of county commissioners had authority to revise the assessment, and ascertain whether there was error in it, and by its judgment define that error. Whether it had authority to go farther, and correct the error, it is not necessary here to decide. The law from which we draw our conclusion is the 14th section of the act of 9th December, 1862, in the words following : " It shall be the duty of the commissioners' court of the several counties to revise and compare the assessment list ; and if, in their opinion, there is any omission, discrepancy, irregularity, or error, in the assessment or valuation of property, profits, or salaries, they shall, so far as to any supposed omission, discrepancy, irregularity, or error, direct a re-assessment to be made, either by the assessor, or such other person or persons as they may deem most suitable and competent." If the court exceeded its authority, as bestowed by this statute, it was in correcting the error itself, instead of directing it to be done. This was, in this case, an immaterial matter ; for the nature of the error is such, that to point it out made the correction of it a mere ministerial duty. We leave out of view, in determining the question of authority or jurisdiction, sections 440 and 441 of the Code ; because, in referring the authority to them, we encounter the question, whether a court, convened at any other time than the second Monday in January, can exercise the powers therein bestowed ; and this question we wish to avoid, leaving it open and undecided.

We have entertained doubts whether the act of 1862 refers to assessments made under the previous laws ; but we think the better opinion is that it does, and we so decide, without argument, as the counsel on both sides agree that such position is correct.

[2.] What we have said brings us to the conclusion, that the judgment of the court of county commissioners, defining the extent of the error in the assessment, was the judgment of a court of competent jurisdiction, which was afterwards affirmed. This judgment was rendered in a proceeding commenced and prosecuted by the complainant himself, and binds him, unless it is reversed in a revising

court, or is set aside by the chancery court, upon some ground recognized in that forum. The bill is framed with a view to this position, and alleges that the facts, as recited in the judgment-entry of the court of county commissioners as the predicate of its decision, do not represent the case as made before that court fully or correctly; and that therefore the complainant could not successfully revise the judgment in the circuit court.

We are not sure that the diversity between the facts as alleged in the complainant's bill, and as recited by the judgment-entry, is a material matter. But let it be conceded that it is; the complainant then occupies the position of one against whom a judgment has been rendered, in which there was error available in a court of law, and of which he was prevented from availing himself by the failure of the court which rendered the judgment to recite fully and correctly the facts upon which its judgment was founded. The complainant can come into chancery, to set aside the judgment, because he was prevented from obtaining relief at law by the cause above stated, only when the prevention was the result of "fraud, accident, or the act of the opposite party, *unmixed with fault or neglect on his part.*" *McCollum v. Prewitt*, 37 Ala. 573; *French v. Garner*, 7 Porter, 549. The complainant is not alleged by his bill to have called the attention of the court of county commissioners, during its sitting, to its defective statement of the facts, and asked a correction or amendment of that statement, or to have presented, by way of bill of exceptions or otherwise, a correct statement of those facts. On the contrary, he states in his bill, that he was ignorant that the statement of facts was incorrect and defective, until the cause came up in the circuit court. With these things presented in the bill, we cannot say that the prevention of a fair revision in the circuit court was "unmixed with fault or neglect" on the part of the complainant.—*Stein v. Burden*, 30 Ala. 270.

The complainant alleges the discovery of some new facts after the judgment was rendered. If those facts were at all material, the failure to discover was the result of the most obvious inattention and neglect.

Whatever may have been the rights of the complainant

in the court of law, he has alleged no sufficient reason for coming into chancery to set aside the judgment against him in the court of county commissioners. So far as the action of the circuit court is concerned, if it erred, the remedy was an appeal to this court; and no excuse is averred for the failure to resort to it. The bill contained no equity, and the chancellor was right in dismissing it.

The decree is affirmed.