*(Circuit Court of Cook County. In Chancery.)*

### Preston Kean & Co.

#### vs.

### Enos Ayers, Collector.

(1878.)

1. CONSTITUTIONAL LAW—CLASS LEGISLATION—VALIDITY OF REVENUE LAW ASSESSING PROPERTY OF PRIVATE BANKERS. That provision of the revenue law which provides for the assessment of the property of private bankers as a class and prescribes a different

rule from that prescribed for listing the property of other citizens, is not so clearly and palpably repugnant to the constitution as to justify the court in declaring it invalid.

2. TAXATION—WHETHER BANKER MUST MAKE RETURN AS TO MONEYS ON DEPOSIT. A banker is not required to make return to the taxing authorities of the moneys of his depositors. The provision of the revenue law which requires the making of a return as to "money on hand" means the money of the banker and not of the depositor.

3. DOUBLE TAXATION—PRESUMPTION AS TO. The revenue law will be so construed as to not impose double taxation on any species of property.

4. TAXATION—CREDITS IN HANDS OF BANKER. Where a banker converts the deposits of his customers into promissory notes or bills receivable, such credits are taxable in the hands of the banker even though the deposits as such were exempt.

5. SAME—EQUITY OF. Perfect equality or singleness of taxation in the strictest sense is an impossibility. All that can be done is to approximate as near as can be to equality of taxation.

6. SAME—MONEYS DUE TO BANKS FROM OTHER BANKS—WHETHER SUBJECT TO TAXATION. Where part of the bonds of a banking firm are placed on deposit with other banks, such funds cannot be considered the funds of the depositors of the depositing bank but as credits of such depositing bank which are subject to taxation in its hands.

7. SAME—GOVERNMENT BONDS HELD AS TEMPORARY INVESTMENT. Whether government bonds which are not held as a permanent investment are exempt from taxation—*quaere.*

8. SAME—JURISDICTION OF COURT OF EQUITY TO RESTRAIN COLLECTION OF ILLEGAL TAX. When an illegal tax is a mere personal charge against the party assessed there is no ground of equity jurisdiction as the remedy at law is adequate.

9. SAME—IN CASE OF REAL ESTATE. Where an illegal tax is assessed against real estate, a court of equity takes jurisdiction to remove a cloud from the title.

10. SAME—WHEN EQUITY SHOULD NOT INTERFERE. Inasmuch as the law gives a party an ample remedy to recover back the amount of an illegal tax and interest, equity should not interfere by injunction.

11. TAXATION—OVERVALUATION OF PROPERTY—DECISION OF COUNTY BOARD—POWER OF COURT. Where property was overvalued and application was made to the county board, the decision of such board which was vested with power to review assessments, was final and conclusive. Courts are not invested with power to make valuations or assessments.

12. TAXATION OF EXEMPT PROPERTY—POWER OF COURT OF EQUITY TO
RESTRAIN—NECESSITY OF APPLYING TO STATUTORY BOARD FOR RE-
LIEF. When property exempt from taxation is assessed, equity
has jurisdiction to afford preventive relief and the owner is
not bound to apply to the statutory board for relief but may
wait until an attempt is made to collect the tax and then apply
to a court of equity for relief.

13. SAME—EFFECT OF APPLICATION TO STATUTORY BOARD ON RIGHT TO
APPLY TO COURT OF EQUITY. Where a party does apply to a
statutory board for relief against an assessment on exempt
property, he cannot thereafter apply to a court of equity for
relief.

Bill for injunction to restrain collection of tax. Heard be-
fore Judge Murray F. Tuley. The facts are stated in the
opinion.

TULEY, J.:—

In the year 1878 the complainants, as private brokers, made
a return to William A. Rice, collector of the town of South
Chicago, of their personal property liable to taxation. The
"return" not being satisfactory to the collector, he gave
them due notice that he would review their assessment on the
12th day of August.

Kean, one of the complainants, appeared before the assessor
upon the day fixed. There is some evidence going to show
that he refused to be sworn, but there is evidence that either
then or before that date, he did submit to a lengthy examina-
tion by the assessor and his attorney as to the business and
property of the *firm*. The assessor added $50,000 to the
amount of taxable property returned by complainants, mak-
ing a total of $52,500, and gave them due notice thereof.

They applied to the board of county commissioners for an
abatement of the amount added by the assessor, but although
the committee of the board at one time appear to have been
favorably inclined to recommend a reduction or abatement of
a portion of the assessment, it failed to do so, but reported
against any change, and the report was concurred in by the
board.

Thereupon the complainants file this bill, offering to pay
the tax due on $2,500 worth of personal property, being the

amount returned by them as liable to taxation, and praying a permanent injunction against the remainder of the tax of $2,435.99, levied upon the assessment as increased by the assessor.

I shall dispose of the constitutional point urged by complainants counsel, to-wit: that the revenue law as to the mode of arriving at the property of private bankers and the amount of tax they shall pay, is void, because it singles them out as a class, and prescribes a different rule from that prescribed for listing and taxing the property of other private citizens, with the remark, that it is not so clearly and palpably repugnant to the constitution as to justify this court and the setting aside an act of the legislature.

The sworn statement or return required to be made to the assessor by section 30 of the revenue law was made as of May 1st, 1878, by complainants as follows:

1. Money on hand or in transit.................. $..........
2. Funds in the hands of other banks, bankers and persons ........................... ..........
3. Checks and cash items not included in foregoing ................................ ..........
4. Amount bills receivable and other credits due or to become due, including accounts receivable and accrued interest............ 438,971 04
5. Amount bonds and stock of every kind, shares of stock of other corporations or companies, held as an investment or representing assets ................................. 134,600 00
6. All other property appertaining to business, not including real estate................ 2,500 00
7. Amount of all deposits made with them by other parties .......................... 655,073 55
8. Amount of all accounts payable, other than current deposits ........................ ..........
9. Amount of bonds or other securities exempt by law from taxation, specifying the amount and kind of each, the same being included in 5th item, and legal tenders... 144,750 00

By the statute the aggregate of the 7th and 8th items, to-wit: $655,073.55 was to be deducted from 4th item, $438,-971.04. The 9th item, $134,600 was to be deducted from 5th item, which was also $134,600.

It will be perceived that these deductions being made there was left of all this property the paltry sum of $2,500, which was the estimated cash value of the office furniture and fixtures.

Upon the same date, to-wit, May 1st, 1878, Preston Kean and Co. made a report to the Chicago Clearing House of the condition of their business on the close of business on that date, as follows:

The amount of deposits reported was the same as reported to the assessor.

The amount of bonds and stocks, 5th item, the same.

As to items 1, 2 and 3 in the return to the assessor, they report none on hand, but in their report to the clearing house, they report as to same matters,—

1. Cash on hand, legal tenders, $40,000, national
   bank notes, $98,181...................... $138,181 00
2. As due from banks and bankers............   120,151 48
3. As checks for clearings...................    44,088 81

The return to the collector and that from the clearing house were both made from the same balance sheet. It appears that to the clearing house among the resources they reported:

Bill and notes................................ $279,917 98
Call loans on cash collaterals................   38,901 58

and when they came to make their return to the assessor, instead of making return of the amount of money in hands of banks and bankers, they took the amount, $120,151.48 and added it to the above items, bill and notes, and call loans, making a total of $438,971.04, which they returned to the assessors as bills receivable, etc., under the 5th item.

Mr. Kean, when on the stand, was asked how it happened that he returned to the clearing house $138,181 cash and $120,151.48 "due from banks and bankers," and in his re-

turn reported to the assessor not one dollar cash on hand, nor a single dollar of funds in the hands of banks and bankers. His answer was, in substance, "that the capital of the firm, $100,000, and the surplus was all invested in government bonds and treasury notes, and the money on hand and the money in the hands of New York and other bankers, subject to our draft, was the money of our depositors and not our own money." That the firm was advised by their attorney that they could not be made to pay taxes on moneys deposited with them, therefore they made no return of such moneys on hand or with other banks and bankers.

This is the contention of the complainants and raises the question, whether private bankers are required to return such moneys for taxation? Are deposits in the hands of private bankers taxable to the bankers?

It will be perceived that the Revenue law, sec. 30, while requiring private bankers to return "the amount of all deposits made with them by other parties" authorizes the amount of such deposits, 7th item, together with accounts payable, 8th item, to be deducted from the 4th item, i. e. bills receivable and other credits. If, however, there are no accounts payable and the only item to be deducted is deposits and the deposits are not all invested in "bills receivable and other credits," but remain partly in the money deposited by other parties, must such part of the deposits remaining in money be returned by the private banker as money on hand and be taxed to him as such?

Section 6 of the revenue law requires every person to list, among other things, for taxation, "all moneys deposited by him, subject to his order, check or draft." Section 25, in the schedule given, there appears "moneys" among articles of property to be listed. By section 27 every person is entitled to have deducted from the gross amount of credits the amount of all *bona fide* debts owing by such person.

Section 295 defines credits to be "every claim or demand for money, labor  *  *  *  due or to become due, not including money on deposit," and the same section defines "moneys" to be "gold, silver, coin, paper and other currency

\* \* \* and every deposit which the person owning \* \* \*
is entitled to withdraw in money.''

From these provisions it is clearly the intent of the law
maker that the person making the deposit with the private
banker shall make return, list for taxation, and pay taxes
upon all such moneys so deposited.

Does the law contemplate that the banker with whom the
money is deposited shall also pay a tax on the same moneys?
If it does, then it is clear that the same thing, the same money,
pays taxes twice in the same year. It is double taxation of
that money.

As before stated, the general words of section 30 ''money on
hand'' would seem to require the banker to make return of it
for taxation. I cannot believe that such was the intention of
the law makers. Double taxation is destructive of that prin-
ciple of equality and uniformity of taxation so imperatively
demanded by the constitution and which pervades, or should
pervade, all our revenue laws.

Says Justice Cooley: ''Where it is once decided that any
kind or class of property is liable to be taxed under one pro-
vision of the statutes, it has been held to follow, as a legal
conclusion, that the legislature could not have intended the
same property should be subject to another tax, though there
be general words in the law which would seem to imply that
it may be taxed a second time.''

Cooley Tax. 165, 166, citing *Savings Bank v. Nashua,* 46
N. H. 389; *State v. Sterling,* 20 Md. 502, and other cases.

In Massachusetts where a provision of the statute required
the personal property of manufacturing corporations to be
taxed in the town where the main factory was located, and
by another provision the owner of every share of the stock
of a manufacturing corporation was required to list such
share for taxation, it was held that as the shares of stock rep-
resented the property of the corporation, the personal prop-
erty could not be taxed and that taxation must be confined to
the shares of the stock. The court held that a construction
of the law was not to be adopted which would subject the
same property to be taxed twice. In that case a literal ren-

dering of the law would have clearly required the property to be twice taxed, but the court nevertheless so construed the law, in the interest of equality, fairness and right, as to prevent the same property being taxed twice. *Salem Iron, etc., Co. v. Danvers,* 10 Mass. 514.

I am of the opinion that the requirement of the law that the banker make return of money on hand or in transit must be held to mean money of the banker (other than deposits) on hand. I do not, in making this construction of the law, ignore the decisions which hold that the relation between the banker and depositor is that of debtor and creditor; and that the money, when deposited, becomes the property of the banker and which may be attached or seized for his debts, but in this case the law is so positive in its requirement that the depositor must list and pay taxes on his moneys on deposit, the presumption of law is so strong against an intent to have the same property twice taxed; it would be so manifestly unfair and unjust that it should be twice taxed, it would be so opposed to the requirement of equality and uniformity of taxation, that I feel compelled to the conclusion that such moneys cannot be taxed in the hands of the banker so long as it retains its character of "money on deposit."

When, however, the banker converts this money into promissory notes, bills receivable or other credits, it no longer remains money on deposit, but becomes taxable to the banker. When so converted it becomes a different species of property from tangible property; it becomes intangible; instead of remaining money on deposit, it becomes "credits."

In *People v. Worthington,* 21 Ill. 171, 173, Justice Caton says: "The constitution means as it declares that each shall pay a tax in proportion to the property which he has, whether that property consists in farms or mortgages; of visible substances, or *choses in action* * * * and it may be true in one sense to say that it is double taxation to tax the horse which is sold and also the note which is given for the purchase money; and so it is to tax the note which is given for $100 borrowed money and also the money which is borrowed."

A man's entire fortune may consist in intangible property

or choses in action and the law contemplates its taxation as much as it does that of tangible property. Perfect equality or singleness of taxation in its strictest sense is an impossibility. All that can be done is to approximate as near as we can to equality of taxation. The entire system or theory of taxation of personal property is extremely vicious and faulty and results in the grossest inequality and injustice.

Of the thirty odd millions of money on deposit by citizens of Chicago with banks and bankers, I do not believe from all that I can learn, that there is $50,000 of it returned for taxation, and of the entire personal property, including therein taxable choses in action, not to exceed one-tenth pays any tax of any nature or kind.

This case is not a bad illustration as to how a certain kind of personal property escapes taxation. This wealthy and well-known banking firm, handling millions of dollars yearly and undoubtedly earning a handsome annual income for its several members, a firm whose business could not be carried on for a week without police protection, is unwilling to pay as much annual taxes as is paid by every person in the community who owns a homestead exceeding twenty-five hundred dollars in value. This attempt to evade this tax—which is really not one-half what it should have been—cannot be expected to commend itself to a court of conscience, one of whose favorite maxims is that "equality is equity."

This firm had in the hands of banks, bankers and others, subject to draft on May 1st, 1878, the sum of $120,151.48, which it was clearly their duty to return for taxation. This money, although it may have been placed on deposit with them, had been taken from their vaults, sent to New York and other places and placed in the hands of other bankers. It became in law the money, the property of such other bankers. It could be seized for their debts and on their bankruptcy would become a part of a general fund for their creditors. It is absurd to call it the money of Preston Kean & Co.'s depositors. It it not money on deposit, subject to the order or draft of the persons who made the deposits with Preston Kean & Co.

The supreme court of this state in 1867 or 1868, in a case where this banking house was contesting a tax, decided in substance, that this bank, having kept its capital stock and surplus invested in government bonds, although they dealt in bonds and the bonds were changing from day to day, in amount and identity, was not liable to taxation on such capital and surplus. The assessor was bound to follow this decision.

If this case goes up, as it probably will, it is to be hoped that the supreme court may consider whether or not the spirit of the law which exempts capital invested in U. S. government securities from taxation, does not require that such investment should be a permanent investment, made as an investment and not a mere trading and temporary investment, as practiced by this concern.

The question raised as to the jurisdiction of a court of chancery in cases of this nature, is an important one and worthy of notice.

"When a tax is assessed as a personal charge against the party taxed, or against his personal property, it is difficult," says Judge Cooley, "to suggest any ground of equitable jurisdiction. Presumptively the remedy at law is adequate. If the tax is illegal and the party makes payment, he is entitled to recover back the amount. The illegality alone furnishes no ground of equitable interference." Cooley on Taxation, p. 538.

In the case of a tax against real estate, where the tax may ultimately ripen into a deed, a court of equity takes jurisdiction to prevent or remove a cloud from the title, the prevention and removal of clouds from title to real estate being a recognized subject of jurisdiction of a court of chancery. But where the tax is merely personal, the remedy at law to recover it back adequate, when arises the jurisdiction of equity? In fact in the later case a party is not injured until he is forced to pay the tax. When he pays the law gives him an ample remedy to recover back his money and interest, and equity should not interfere by injunction and cripple or retard the state in its effort to collect its revenue remedy by

restraining the exercise of powers perverted to a fraudulent
or oppressive purpose (see *Drake v. Phillips,* 40 Ill. 388),
and jurisdiction has been taken in cases where the tax was
purely a personal tax, but in my opinion it is time to call a
halt in this matter of judicial interference with the govern-
ment in the collection of its revenues.

In this case the act of the assessor was a conscientious and
just one, and there can be no pretense of any fraud and cer-
tainly none that the act of the assessor was oppressive.

Independent of the question of the jurisdiction of a court
of chancery in this class of cases, and independent of the
question of the legality of the tax, the complainants cannot
have a decree in their favor on the case as made by the proofs.

After the assessor had raised their assessment from $2,500
to $52,500 the complainants applied to the county board for
an abatement of the assessment. It is true, as argued by the
county attorney, if the assessment that was made is to be
treated as an overvaluation of the complainants' property,
the decision of the county board, which was vested with power
to review the assessment, would under our decisions be final
and conclusive. Courts are not vested with power to make
valuations or assessments. This must be done by the town
assessors, subject only to review by the town board of equali-
zation, or the county board, as the case may be.

This cannot, however, be treated merely as a case of over-
valuation of property liable to assessment. The complaint
is not that the assessor over-valued the office furniture, but
that he included in his assessment property not liable to taxa-
tion, and that to the amount of $50,000. This being the con-
tention, it is argued that chancery has jurisdiction. Our su-
preme court has decided that chancery has jurisdiction to
afford preventive relief by injunction in all cases where prop-
erty exempt from taxation is attempted to be taxed. And
while it is true that when property exempt from taxation is
assessed, the owner is not bound to apply to the statutory
board—in this case the county board—for relief, but may
wait until the attempt is made to collect the tax and then
go into chancery for his injunction; yet if he does seek relief

from the statutory tribunal and does not obtain it, can the owner afterwards have a standing in a court of equity and obtain the relief which was denied him by the statutory tribunal? I am clearly of the opinion that he can not.

The assessment of taxes is a legislative act. It is for that body to determine the necessity, the policy of a tax and to make necessary rules and regulations for its assessment and collection. It has full power to say what officer, board or tribunal shall review the assessment and decide all questions connected with the making of such assessments. The tribunal or board to which this power was given in this case is the county board.

By section 97 of the revenue law the county board is authorized to hear and determine the complaint of any person "that he is assessed on property claimed to be exempt from taxation." If the board decides against the complaint, then the person making the complaint has the right to appeal to the state auditor, and by the same section it is made the duty of the state auditor to present the question as to the property being exempt to the supreme court.

After the adverse decision of the county board, the complainants instead of taking their appeal to the state auditor, abandoned the pursuit of the statutory remedy and filed their bill in this court. Having abandoned their right to appeal to the state auditor and thence to the supreme court, the decision of the county board, the statutory tribunal, became final and conclusive. The question became *res adjudicata*, and beyond the power of this court or any other court to review.

The law does not give the county board exclusive jurisdiction to determine such questions, but does give it jurisdiction to do so, and the complainant having appealed to that jurisdiction was bound by its decision and could only have it reviewed in the manner and by the officer or court named in the statute. He is concluded by the decision of the tribunal to which he elected to make his complaint, and cannot after an adverse decision seek the forum of a court of equity for relief. *Weaver v. State*, 39 Ala. 535; *Commonwealth v. Cary*

*Improvement Co.,* 98 Mass. 19; *Kimber v. Schuylkill County,* 20 Pa. St. 366.

For the reasons given, let the injunction be dissolved and the bill be dismissed at complainant's costs for the want of equity.